UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-655-MOC
3:16-cr-100-MOC-DSC-1

| | | |
|---|---|---|
| SHANNA JEAN BRANDON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to

Vacate Sentence, (Doc. No. 1). Also pending are several *pro se* Motions. (Doc. Nos. 10, 11, 12,

13, 15, 16, 17, 18, 21).

## I.    BACKGROUND

Petitioner was charged in the underlying criminal case with: methamphetamine

trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count One), and

possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)

(Count Six).  (3:16-cr-100 ("CR") Doc. No. 14).

Petitioner pleaded guilty to Count One pursuant to a written Plea Agreement in exchange

for the Government's dismissal of Count Six. (CR Doc. No. 25). Petitioner admitted that she is,

in fact, guilty as charged in Count One. (CR Doc. No. 25 at ¶ 1). The Plea Agreement sets forth

Petitioner's sentencing exposure of "not less than ten (10) years nor more than life

imprisonment…" and specifies that Petitioner "does not have any prior felony drug convictions

for purposes of 21 U.S.C. § 851." (CR Doc. No. 25 at ¶ 5).

1

The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw her plea as a result of the sentence imposed. (CR Doc. No. 25 at ¶ 7).

The parties agreed to jointly recommend: the amount of a mixture and substance containing a detectable amount of methamphetamine that was known to or reasonably foreseeable by Petitioner was "at least five (5) kilograms but less than fifteen (15) kilograms, resulting in a base offense level of 34;" Petitioner "should receive a 2-level weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)…;" Petitioner is not eligible for the 'safety valve' pursuant to 18 U.S. Code § 3553(f) and U.S.S.G. §§ 2D1.1(b)(17) and 5C1.2;" the plea is timely for purposes of U.S.S.G. § 3E1.1(b); and the career offender or armed career criminal sentencing provision may be used in determining the sentence, if applicable. (CR Doc. No. 25 at ¶ 8). The parties remained free to argue their respective positions regarding specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, or adjustments to the offense level. (Id.).

The Petitioner stipulated to the existence of a factual basis to support the guilty plea as set forth in the written Factual Basis, which she read and understood. (CR Doc. No. 25 at ¶ 15). She agreed that the Factual Basis may be used by the Court, United States Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence, unless the Factual Basis itself notes that Petitioner's right to object to a particular fact was explicitly reserved. (Id.).

2

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate herself. (CR Doc. No. 25 at ¶ 18). The Plea Agreement contains an express waiver of Petitioner's right to contest her conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 25 at ¶¶ 19-20). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (CR Doc. No. 25 at ¶ 30).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

On February 3, 2016, Charlotte-Mecklenburg Police Department officers conducted a traffic stop of a vehicle driven by Erick Yahir RODRIGUEZ-Salomon and found a 9mm Smith & Wesson handgun and a filled ammunition magazine inside the center console of the vehicle. RODRIGUEZ-Salomon stated that the car belonged to his girlfriend, Shanna Jean BRANDON. While RODRIGUEZ-Salomon was in jail for the aforementioned gun crime, he placed several calls to BRANDON in which he asks her to collect money (apparently drug proceeds) owed to him.…

On March 7, 2016, law enforcement in Georgia stopped Defendant (1) Shanna Jean BRANDON in her vehicle and found her in possession of **approximately 32 grams of methamphetamine, approximately $12,501 in U.S. currency, and a .40 caliber Smith & Wesson handgun**…. Defendant BRANDON provided a post-Miranda confession in which she stated, among other things, the following: Her husband, Erick RODRIGUEZ-Salomon, was in jail in Georgia on an ICE warrant for a firearm violation. BRANDON was a mid-level dealer in Charlotte for "Edward Sanchez," selling methamphetamine that she picked up from Fort Worth, Texas, from a person to whom Petro Torres GONZALEZ had introduced BRANDON. She picked up large quantities of "ice" (high-purity methamphetamine) each time, including **3 kilograms one time and 10 kilograms another**. She conducted between $30,000 and $60,000 of money laundering transactions through banks to send funds to her source of supply. **She also admitted that the drugs and gun in her car belonged to her, and that she**

3

**had the gun for protection while making drug runs.**

On March 16, 2016, law enforcement officers executed a search warrant at the Midland, North Carolina residence of Defendant BRANDON and RODRIGUEZ and found two small jars of liquid methamphetamine "ice" that was mostly crystalized; two handgun holsters; and empty Taurus handgun box; a scale; and banking and other financial documents. The landlord had already started to evict the defendants and had taken possession of a Keltec foldable rifle and had thrown approximately **numerous grams of methamphetamine** into a dumpster. The day after the search, the landlord contacted the investigative team and said that they had found an additional **50 grams of methamphetamine** in a bag in a kitchen cabinet behind pots, as well as a digital scale.

Finally, RODRIGUEZ-Salomon provided a post-Miranda confession on March 21, 2016, and, among other things, stated that BRANDON had picked up 3 kilograms of methamphetamine but got into a car accident in Mississippi en route back to their home. He then went to the accident location and picked up the methamphetamine.

The drug amounts referenced in debriefings, discussed above, include some overlap. **The amount of a mixture and substance containing a detectable amount of methamphetamine that was known to or reasonably foreseeable by the Defendant was at least five (5) kilograms but less than fifteen (15) kilograms**.

(CR Doc. No. 24 at 1-2) (paragraph numbers omitted; emphasis added). The Factual Basis does not include any objections. (Id.).

On May 12, 2016, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. (CR Doc. No. 102). Petitioner stated, under oath, that she wanted the Court to accept her guilty plea to Count One. (Doc. No. 102 at 3). She acknowledged that she received a copy of the Indictment and discussed it with her lawyer (CR Doc. No. 102 at 4). The Magistrate Judge read Count One aloud, including that the methamphetamine conspiracy involved 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine that was reasonably foreseeable to her. (CR Doc. No. 102 at 5). The Magistrate Judge informed Petitioner of her sentencing exposure of "not less than

4

10 years nor more than life imprisonment...." (Id.). Petitioner confirmed that she understood. (CR Doc. No. 102 at 6). Petitioner stated that she understood the consequences of the plea, including the deprivation of certain civil rights including the right to possess a firearm. (CR Doc. No. 102 at 6-7). Petitioner agreed that she had discussed with counsel: how the sentencing guidelines may apply to her case; that the Court would not be able to determine her sentence until a Presentence Investigation Report ("PSR") has been prepared and she has had a chance to comment on it; she may receive a sentence that is different from that called for by the guidelines; and she will still be bound by the plea even if she receives a sentence more severe than she expects or if the Court does not accept the Government's recommendation. (CR Doc. No. 102 at 7). Petitioner acknowledged the rights she was waiving by pleading guilty, including the rights: to plead not guilty; have a speedy trial; summon witnesses; confront adverse witnesses; to have a trial at which she is represented by counsel; to be presumed innocent; and to require the Government to prove her guilt beyond a reasonable doubt. (CR Doc. No. 102 at 8). She stated that she understood that the case would proceed directly to sentencing. (CR Doc. No. 102 at 9). The following then transpired:

> THE COURT: And we've been over the charge contained in count one of the bill of indictment. Putting it simply again, the charge there is methamphetamine trafficking conspiracy. Have you been over that charge with Mr. Winiker?
>
> THE DEFENDANT: Yes.
>
> THE COURT: **Do you understand the charge**?
>
> THE DEFENDANT: **Yes**.
>
> THE COURT: Are you guilty of the charge?
>
> THE DEFENDANT: Yes.
>
> THE COURT: **Are you guilty of that crime?**

5

THE DEFENDANT: **Yes.**

(CR Doc. No. 102 at 9) (emphasis added).

The Court summarized the Plea Agreement in open court. (CR Doc. No. 102 at 9-11). Petitioner agreed that she went over the Plea Agreement carefully with her lawyer and that she understood and agreed with all its terms including the waiver of her appellate and post-conviction rights. (CR Doc. No. 102 at 12-13). Petitioner stated that she reviewed the Factual Basis, discussed it with counsel, understood it, and agreed with it. (CR Doc. No. 102 at 13-14). Petitioner stated that nobody threatened, intimidated, or forced her to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. (CR Doc. No. 102 at 14). Petitioner had enough time to discuss any possible defenses with her lawyer and was satisfied with counsel's services. (Id.).

The PSR scored the base offense level as 34 because the amount of methamphetamine known to or reasonably foreseeable by Petitioner was at least five kilograms but less than 15 kilograms pursuant to U.S.S.G. § 2D1.1(c)(3). (CR Doc. No.44 at ¶ 17). Two levels were added because Petitioner possessed a .40 caliber handgun pursuant to U.S.S.G. § 2D1.1(b)(1). (CR Doc. No. 44 at ¶ 18). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 33. (CR Doc. No. 44 at ¶¶ 24-26). Petitioner had four criminal history points and a criminal history category of III. (CR Doc. No. 44 at ¶¶ 56-57). The resulting advisory guidelines range was 168 to 210 months' imprisonment followed by five years of supervised release. (CR Doc. No. 44 at ¶¶ 88, 91). The PSR notes that, "[a]bsent the Plea Agreement, the defendant would be facing a mandatory 5 years imprisonment, consecutive to any other term of imprisonment…" for Count Six. (CR Doc. No. 44 at ¶ 89). No PSR objections

6

were filed.

A sentencing hearing came before the Court on November 30, 2016. (CR Doc. No. 103). Petitioner stated that she recalled the Rule 11 hearing, the answers she provided were true and accurate, and she would "absolutely" answer the questions the same way if she were asked again. (CR Doc. No. 103 at 2-3). Petitioner stated that she pleaded guilty because she committed the offense to which she pleaded guilty. (CR Doc. No. 103 at 3). Petitioner admitted that she went over the PSR with her lawyer and understood its contents. (CR Doc. No. 103 at 4-5).

The Government moved for a downward variance and noted that the Petitioner was originally facing a 15-year minimum mandatory, but that the § 924(c) charge was dismissed under the Plea Agreement, which reduced her sentencing exposure to between 14 and 17 years' imprisonment. (CR Doc. No. 103 at 6). Defense counsel argued for a sentence of five years or less because of *inter alia* Petitioner's childhood and family circumstances, short-term involvement in the offense, two young children, and confession in this case. (CR Doc. No. 103 at 7-11). Counsel further argued that Petitioner's "primary motivation [for trafficking methamphetamine] was to pay off the drug dealers that [her common law husband] owed [to] … cartel people who would, of course, take reprisals against family members potentially and realistically if she didn't do that." (CR Doc. 103 at 8). Petitioner continued the scheme for about one month to try and raise funds for her husband, who was facing deportation. (Id.). Counsel also noted that the "prime reason" that Petitioner had a criminal history category of III was because of "relatively minor criminal convictions" and pending charges that were mostly related to driving with a revoked license. (CR Doc. No. 103 at 9).

Petitioner chose to address the Court. She expressed her remorse and asked the Court for leniency. (CR Doc. No. 103 at 19-22). She further stated *inter alia*:

When [her common law husband] got arrested he had a friend, which is my other co-defendant.[1] And **I had heard stories about how he had got kidnapped when he was 9 years old.** They put jumper cables on to his private area and electrocuted him, is what he said. When I found out that Mr. Rodriguez owed these people, **I felt I had no choice because I have two little girls. Can you imagine what they would have done to my babies**. I would never do nothing like this….

> **You have no idea how relieved I was when I got caught.** I begged to talk to the people, to anybody that would talk to me in Hart County, Georgia…. **I begged to speak to the marshals there**. I wrote letter after letter. I felt so relieved to get that off me…

> I agree that meth is a bad, bad drug and I am so sorry. I am so sorry for what I did. But **I hope you see, I didn't have a choice, or that is how I felt**. And – my co-defendant gave the testimony in his factual basis, from what was read to me, the same thing I just told you, that **he got kidnapped when he was 9 years old. Knowing that, what was I supposed to do?**

> This is not me. Please don't think that this defines me because it don't. I just felt stuck….

(CR Doc. No. 1-3 at 18, 20) (emphasis added).

The Court granted the Government's motion and departed below the guideline range to an offense level of 26, which reduced the advisory range to between 78 and 97 months' imprisonment; essentially a 50% sentence reduction. (CR Doc. No. 103 at 24); (CR Doc. No. 85) (Statement of Reasons). The Court found that a sentence of 84 months' imprisonment and five years of supervised release was appropriate after considering the § 3553(a) factors and all the circumstances of the case. (CR Doc. No. 103 at 24). The Judgment was entered on December 5, 2016. (CR Doc. No. 84). Petitioner did not appeal.

Petitioner filed the instant § 2255 Motion to Vacate on October 21, 2017.[2] (Doc. No. 1).

---

[1] This appears to refer to co-Defendant Pedro Gonzalez (a/k/a Eduardo Sanchez).

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

She argues that counsel:[3] (1) provided ineffective assistance before the guilty plea was entered; (2) coerced her and provided misadvice, which rendered the plea involuntary; and (2) provided ineffective assistance with regards to sentencing. She seeks resentencing. (Doc. No. 1 at 14).

The Government filed a Response arguing that the Petitioner's claims are waived by her knowing and voluntary guilty plea and are meritless. (Doc. No. 5).

Petitioner filed a Reply in which she reiterates her § 2255 claims and presents new arguments in support of post-conviction relief.[4] (Doc. No. 8).

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that her "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

---

[3] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order has been considered and rejected.

[4] She argues *inter alia*: she would have rejected the plea offer and proceeded to trial but for counsel's misadvice and coercion; counsel told her that, the faster she accepted the guilty plea, the more of a reduction she would receive for acceptance of responsibility; she is not guilty of the drug trafficking conspiracy to which she pleaded guilty because she was "official ordered to commit the drug trafficking crime by cartel [and] … did not commit the crime willingly;" she repeatedly wrote inmate requests to protect her family from the drug cartel; and she "did not equal protection of the laws for her family, her 14th Amendment right, and as a mother protecting her daughters, her 9th Amendment rights were violated." (Doc. No. 8 at 3-4, 16). The Petitioner's new claims are not properly before the Court, as they were raised for the first time in Petitioner's unverified Reply. See generally Fed. R. Civ. P. 15 (addressing amendments); Rule 2(b)(5), 28 U.S.C. foll. § 2255 (a motion to vacate must be signed under penalty of perjury). Moreover, her allegations that she is not guilty of the conspiracy offense, her guilty plea was involuntary, and that counsel was ineffective with regards to sentencing are conclusively refuted by the record and meritless. See Sections III(2)-(3), *infra*. Her allusion to incidents that allegedly occurred while she was incarcerated are irrelevant to her § 2255 claims, and her references to the Ninth Amendment and equal protection are conclusory and nonsensical. Therefore, even if the new arguments were properly before the Court, they would be rejected.

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Petitioner raises a number of claims of ineffective assistance of counsel with regards to the plea-plea representation, the guilty plea's voluntariness, and sentencing.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

**(1)** <u>**Waiver**</u>

Petitioner appears to argue that counsel provided ineffective assistance before she pleaded guilty by failing to seek to suppress Petitioner's statement to police, a firearm, and narcotics.

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." <u>United States v. Willis</u>, 992 F.2d 489, 490 (4th Cir. 1993). A knowing and voluntary guilty plea waives any "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Blackledge v. Perry</u>, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." <u>Id.</u>

Petitioner stated at the Rule 11 hearing that she understood the charge, her sentencing exposure, and the rights she was relinquishing by pleading guilty including the appellate and post-conviction waivers. <u>See</u> (CR Doc. No. 102 at 5-13). She stated that the guilty plea was freely and voluntarily entered and was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. (CR Doc. No. 102 at 14). She acknowledged that she was guilty of Count One, and understood and agreed with the Factual Basis. (CR Doc. No. 102 at 9, 13-14). She further agreed that she had discussed any possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 102 at 14). The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. <u>See</u> Fed. R. Crim. P. 11(b)(1)-(3); <u>United States v. DeFusco</u>, 949 F.2d 114, 116 (4th Cir. 1991).

11

Petitioner's knowing and voluntary guilty plea waived any allegations of ineffective assistance of counsel that preceded it, including her suggestion that counsel should have moved to suppress her confession, a firearm, and narcotics.[5] Accordingly, these claims are dismissed and denied.

**(2)** **Involuntary Plea**

Petitioner argues that her guilty plea to Count One was not knowing and voluntary because counsel "scared her" into signing the Plea Agreement by telling her he would "never tell [her] anything good," and that she would receive the maximum sentence of life imprisonment if she went to trial. (Doc. No. 1 at 4); (Doc. 1-1 at 4-5). She argues that this amounted to duress "because of … [Petitioner's] mental state during this dreadful period in her life…." (Doc. No. 1-1 at 5).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters her plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

---

[5] Even if this claim were not barred by Petitioner's voluntary guilty plea, a suppression motion would not have been successful for the reasons set forth in the Government's Response. See (Doc. No. 5 at 12-15).

Petitioner's contentions that counsel pressured and coerced her into pleading guilty by telling her there was no good news in the case, and that she would receive the maximum sentence of life imprisonment if she went to trial, are conclusively refuted by the record. She stated under oath at the Rule 11 hearing that she was pleading guilty to Count One because she is, in fact, guilty of that offense and that she was doing so voluntarily without any threats, intimidation, force, or promises of leniency other than the terms of the Plea Agreement. (CR Doc. No. 102 at 14). Her present self-serving contentions that the plea was unknowing and involuntary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Any suggestion that Petitioner was not competent to plead guilty is conclusively refuted by the record, including her lucid statements and conduct at the Rule 11 hearing, as confirmed by counsel's statements that he believed Petitioner understood the proceedings. (CR Doc. No. 102 at 15) (counsel stating at the Rule 11 hearing that he was satisfied that Petitioner knew what she was doing); (CR Doc. No. 24 at 3) (counsel's signature on the Factual Basis indicating that he discussed the Plea Agreement, Factual Basis, and Bill of Indictment with Petitioner and was satisfied that Petitioner understood them).

Moreover, Petitioner has failed to demonstrate prejudice. Petitioner does not allege that she would have proceeded to trial but for counsel's alleged misadvice; she seeks only a

resentencing in this § 2255 proceeding.[6]  Further, the decision to go to trial would not have been objectively reasonable. The Plea Agreement resulted in the dismissal of a § 924(c) charge that carried a mandatory consecutive sentence, a three-level reduction for acceptance of responsibility, and a Government downward departure motion. Further, there was strong evidence of Petitioner's guilt as demonstrated by the Factual Basis. See United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

The record reveals that Petitioner's guilty plea was knowingly and voluntarily entered and that no ineffective assistance of counsel rendered the plea involuntary.  This claim is therefore denied.

**(3)**   **Sentencing**

Petitioner contends that counsel performed deficiently with regards to sentencing by failing to: object to the two-point gun enhancement because the gun clearly was not used in commission of drug trafficking; object and seek a downward departure because the PSR miscalculated and overstated her criminal history, after telling Petitioner he would do so; file a motion of voluntary disclosure and seek a downward departure pursuant to § 5K2.16; move for a departure based on lesser harms and mitigating circumstances because Petitioner was protecting

---

[6] She argued for the first time in her Reply that she would not have pleaded guilty but for counsel's alleged misadvice. Even if this argument were properly before the Court, it would be rejected because proceeding to trial would have been objectively unreasonable as discussed in this section.

14

her young children from kidnapping by a drug cartel;[7] and seek a two-point reduction pursuant to Amendment 782. She contends that her sentence would have been "drastically different" had counsel raised these "very valuable rights…." (Doc. 1-1 at 16).

As a preliminary matter, to the extent that the Petitioner suggests that the PSR was miscalculated and/or that sentencing errors occurred, these arguments are not cognizable in this § 2255 proceeding. See Davis v. United States, 417 U.S. 333, 346 (1974) (a sentencing error is not cognizable on § 2255 review unless it is constitutional, jurisdictional, or amounts to a "fundamental defect which inherently results in a complete miscarriage of justice."); United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999) (barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding."); United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). Such claims are also barred by the Petitioner's knowing and voluntary post-conviction waiver because they are not claims of ineffective assistance of counsel or prosecutorial misconduct. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) (an appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made); Lemaster, 403 F.3d at 200 (the Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement).

When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The Petitioner's claims of ineffective assistance of counsel with regards to sentencing are

---

[7] Petitioner alleges that a co-Defendant Gonzalez (a/k/a Eduardo Sanchez) was kidnapped by the same cartel at age nine. (Doc. No. 1-1 at 13).

conclusively refuted by the record. First, there was no basis for counsel to object to the two-point gun enhancement because that enhancement is part of the Plea Agreement that Petitioner knowingly and voluntarily entered. (CR Doc. No. 25 at ¶ 8(b)). The enhancement is also supported by the Factual Basis which Petitioner admitted is true. (CR Doc. No. 24 at 1-2). Counsel was not ineffective for failing to raise this frivolous objection. See generally Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016) (a defendant is not prejudiced by counsel's failure to make a meritless objection).

Second, Petitioner contends that counsel should have objected and moved for a downward departure because the PSR miscalculated and overstated her criminal history. This claim is refuted by the record insofar as counsel noted at sentencing that the "prime reason" for her criminal history category of III was because of "relatively minor criminal convictions" and pending charges that were mostly related to driving with a revoked license. (CR Doc. No. 103 at 9). To the extent that the Petitioner is attempting to argue that PSR calculation errors occurred, this claim is too vague and conclusory to state a claim. Although she complains generally that her criminal history is overstated, she fails to identify any particular error that reasonable counsel would have raised, and would have had a reasonable chance of success. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

Third, Petitioner argues that counsel should have sought a downward departure for her voluntary disclosure of the offense. Section 5K2.16 applies if a defendant voluntarily discloses, and accepts responsibility for their crimes "if such offense was unlikely to have been discovered otherwise." This Section does not apply if the disclosure occurred in connection with an investigation for related conduct. See United States v. Werner, 713 F. App'x 27 (2d Cir. 2017)

16

(voluntary disclosure that defendant had abused his daughters did not qualify for a departure under § 5K2.16 because the disclosure occurred during an investigation for the receipt of child pornography); United States v. Castaldi, 743 F.3d 589 (7th Cir. 2014) (§ 5K2.16 did not apply to defendant's disclosure of fraud because he believed that the Ponzi scheme was about to collapse, making its discovery by law enforcement inevitable and imminent). The record reveals that Petitioner made her statement to police on March 21, 2016, after the March 7, 2016 vehicle stop and seizure of methamphetamine, over $12,000 in U.S. currency, and a handgun, as well as the March 16, 2016 search of her residence in which officers seized additional methamphetamine. (CR Doc. 24 at 2). Petitioner's statement was while the investigation of her methamphetamine trafficking was underway, and therefore, § 5K2.16 does not apply. Counsel was not ineffective for failing to seek a departure on this basis. See Rodriguez, 842 F.3d at 346.

Fourth, Petitioner argues that counsel should have moved for a departure based on lesser harms and mitigating circumstances because Petitioner engaged in methamphetamine trafficking to protect her young children from kidnapping by a drug cartel. Petitioner's assertion that counsel did not seek departure based on mitigating circumstances is rejected insofar as counsel described Petitioner's family circumstances at length at the sentencing hearing, including the argument that Petitioner's "primary motivation was to pay off the drug dealers that [her common law husband] owed [to] … cartel people who would, of course, take reprisals against family members potentially and realistically if she didn't do that." (CR Doc. 103 at 8). The Petitioner also informed the Court of her subjective belief that cartel members may kidnap her children. Therefore, the argument that Petitioner's fear that her family would be harmed by cartel members, was before the Court as a basis for departure. She fails to explain what more counsel could have done to prevail on this point. Accordingly, her argument that counsel failed to present

17

this as a mitigating circumstance is refuted by the record and is rejected.

The Petitioner further suggests that counsel should have moved for a lesser harms departure based on her kidnapping fear pursuant to § 5K2.11. The Guidelines' lesser harms policy provides that a reduced sentence may be appropriate when a defendant commits a crime "in order to avoid a perceived greater harm," *i.e.* a mercy killing. U.S.S.G. § 5K2.11.[8] This departure is "typically inappropriate where the defendant could have pursued other means of avoiding the greater harm rather than committing a crime." United States v. Rooney, 370 F.Supp.2d 310, 316 (D. Me. 2005) (quoting United States v. Grewal, 2 F.Supp.2d 612, 624 (D.N.J. 1998)). Any suggestion that Petitioner only engaged in methamphetamine trafficking because her children were threatened with kidnapping is belied by her statements at the sentencing hearing that she merely heard about her co-defendant's experience as a child, and supposed that the same may happened to her own children. (CR Doc. No. 103 at 18, 20). Petitioner has failed to come forward with any concrete evidence of a perceived greater harm. See Rooney, 370 F.Supp.2d at 317 (defendant who illegally purchased a firearm to protect his wife from persistent threats from her ex-boyfriend was not entitled to a § 5K2.11 departure because he failed to demonstrate that whatever threat the ex-boyfriend posed was "direct and imminent," nor did he attempt alternate means of protection such as alerting law enforcement of the threats). Moreover, had the Petitioner truly feared that her children would be kidnapped, she simply could have informed law enforcement rather than engaging in methamphetamine trafficking. See Grewal, 2 F.Supp.2d at 623-24 (defendant who committed extortion against a murder suspect was not entitled to a § 5K2.11 departure on the basis that she feared he would

---

[8] This Section also permits a departure where "conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue," *i.e.* where a war veteran possessed a machine gun or grenade as a trophy. U.S.S.G. § 5K2.11. That provision is not at issue here.

never face prosecution, because she could have sought assistance from police); United States v. Pierce, 1997 WL 260454 (N.D. Ill. May 7, 1997) (rejecting defendant's contention that he engaged in bank fraud to obtain money for a criminal defense lawyer for his son, because court-appointed counsel was available). Therefore, counsel was not ineffective for failing to raise this meritless departure argument. See Rodriguez, 842 F.3d at 346.

Fifth, petitioner argues that counsel should have moved for a two-point reduction pursuant to Guidelines Amendment 782. Amendment 782, which reduced the base offense levels assigned to most drug quantities in § 2D1.1 by two levels, went into effect on November 1, 2014. U.S.S.G. Supp .to App. C, Amend. 782 (effective Nov. 1, 2014). Petitioner was sentenced under the 2015 Guidelines, which incorporate Amendment 782. Petitioner was not entitled to a further two-level reduction in the base offense level, and therefore, counsel was not ineffective for failing to raise this meritless issue. See Rodriguez, 842 F.3d at 346.

Moreover, Petitioner has failed to establish prejudice. The Court varied downward by 50% on the Government's motion. Petitioner has failed to identify any additional argument or objection that counsel could have made that had a reasonable probability of resulting in a lower sentence under these circumstances. Accordingly, this claim will be dismissed and denied.

**(4)** **Pending Motions**

A number of *pro se* Motions are pending in this case. They will be addressed in turn.

First, Petitioner asks to be released while the § 2255 proceeding is pending. (Doc. Nos. 10, 11). Petitioner failed to demonstrate that her release pending the outcome of this proceeding is warranted. See generally United States v. Eliely, 276 F. App'x 270 (4th Cir. 2008) ("Before a prisoner may be released on bail pending a collateral attack on his conviction, he must show substantial constitutional claims on which he has a high probability of success, and exceptional

19

circumstances making a grant of bail necessary for the habeas remedy to be effective."). In any event, the § 2255 Motion to Vacate has now been resolved and the Motions seeking release will be denied as moot.

Next, Petitioner seeks to "supplement" her § 2255 Motion to Vacate pursuant to <u>Sessions v. Dimaya</u>, 138 S.Ct. 1204 (2018).[9] (Doc. No. 12). She appears to argue that the vagueness of § 924(c)'s residual clause somehow invalidated her two-point firearm enhancement. This is essentially a piecemeal effort to amend the § 2255 Motion to Vacate, which will not be allowed. <u>See generally</u> Fed. R. Civ. P. 15. In any event, this argument is unavailing because <u>Johnson v. United States</u>, 576 U.S. 591 (2015) and its progeny do not apply to the advisory sentencing guidelines. <u>See</u> <u>Beckles v. United States</u>, 137 S.Ct. 886 (2017).

Petitioner's requests to expedite this § 2255 proceeding, (Doc. Nos. 13, 16), will be denied as moot.

Petitioner seeks "all relevant information and documents" in her criminal case pursuant to the Freedom of Information Act, 5 U.S.C. § 552. (Doc. No. 15). Petitioner's Plea Agreement contains an express FOIA waiver. (CR Doc. No. 25 at ¶ 21). Accordingly, her FOIA Motion is denied.

Petitioner seeks discovery in the § 2255 proceeding, an evidentiary hearing, and the appointment of counsel. (Doc. Nos. 18, 21). Rule 6 of the Rules Governing § 2255 Proceedings states that a judge may, for "good cause," authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. Rule 6(a), 28 U.S.C. foll. § 2255. A party requesting discovery in a § 2255 proceeding must provide reasons for the request, include any proposed interrogatories, requests

---

[9] Holding that 18 U.S.C. § 16(b) is unconstitutionally vague.

for admission, and specify any requested documents. Rule 6(b), 28 U.S.C. foll. § 2255. Petitioner has failed to demonstrate good cause justifying discovery in this case. Nor is she entitled to the appointment of counsel. There is no general constitutional right to the appointment of counsel in § 2255 actions. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Petitioner has failed to demonstrate any circumstance that would warrant the appointment of counsel in this case. See 18 U.S.C. § 3006A(a)(2)(B). Moreover, no evidentiary hearing is required, as the Court was able to resolve the § 2255 Motion to Vacate based on the record, and thus the appointment of counsel is not required on that basis. See Rule 8(c), 28 U.S.C. foll. § 2255 (requiring the appointment of counsel where an evidentiary hearing is warranted).

Finally, Petitioner asks the Court to send her materials via certified mail because her mail is being tampered with in prison due to staff retaliation. (Doc. No. 17). Petitioner refers to a single instance where a piece of mail in the criminal case was returned as undeliverable in February 2018. Petitioner is no longer incarcerated at the same institution where that single instance of non-delivery occurred, and nothing in the record or presented by Petitioner suggests that certified mail is required. Accordingly, this request will be denied.

## IV.     CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice and denied. The pending Motions are denied.

**IT IS, THEREFORE, ORDERED** that:

1.     Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2.     Petitioner's *pro se* Motions (Doc. Nos. 10, 11, 12, 13, 15, 16, 17, 18, 21) are **DENIED**.

21

3.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4.    The Clerk is instructed to close this case.

Max O. Cogburn Jr
United States District Judge

22

Signed: September 29, 2021